David N. Chandler, Jr. SBN 235427
DAVID NYLE CHANDLER P.C.
1747 Fourth Street
Santa Rosa, CA 95404
Telephone: (707) 528-4331

Attorney for Debtor

UNITED STATES BANKRUPTCY COURT
NORTHERN DISTRICT OF CALIFORNIA

IN RE:

WILDFLOWER INVESTMENT
PROPERTIES II, LLC,

    Debtor.        /

CASE No. 25-10580 WJL

CHAPTER 11

DISCLOSURE STATEMENT
January 29, 2026

I.

A. <u>INTRODUCTION</u>.

Wildflower Investment Properties II, LLC, hereafter referred to as the "Debtor", submits this Disclosure Statement to all of its known creditors and interest holders entitled to same pursuant to Section 1125 of the United States Bankruptcy Code, ll U.S.C. Section 101, et seq. (the "Code"). The purpose of this Disclosure Statement is to provide creditors of the Debtor with such information as may be deemed material, important and necessary in order to make a reasonably informed decision in exercising the right to vote on the Debtor's Chapter ll Plan of Reorganization (the "Plan") described below. The Debtor's Plan is on file with the Bankruptcy Court.

NO REPRESENTATIONS CONCERNING THE DEBTOR (INCLUDING THE VALUE

OF ASSETS, ANY PROPERTY AND CREDITORS CLAIMS) INCONSISTENT WITH ANYTHING CONTAINED HEREIN HAVE BEEN AUTHORIZED. Except as otherwise expressly stated, the portions of this Disclosure Statement describing the Debtor and the Plan have been prepared from information obtained from the Debtor.

Under the Plan, the Debtor will retain the real property located at 187 Main St., Point Arena, CA, at least until the Real Property is refinanced or sold (with the former being the Debtor's goal). The Plan modifies the secured claim of Anne Freeman, Trustee of the Anne Freeman Family Trust, dated June 5, 2014 (Poof of Claim No. 3) by restructuring it based on a full 30-year amortization of principal and interest at a market rate, with the balance being due at five (5) years from the Effective Date of the Plan. Under the Plan, the Debtor will make monthly payments to Ms. Freeman until such time as her claim is satisfied.

The Plan proposes to pay administrative claims and other priority claims in full, and proposes to pay 90% of allowed general unsecured claims. The Plan further provides that claims will be paid as provided in the Plan from proceeds from a refinance or sale. Under the Plan, the Debtor may transfer title to 187 Main St., Point Arena, CA to 610 Properties, LLC as a condition of refinance.

The 90% dividend proposed by the Plan on account of unsecured claims exceeds what would likely available to general unsecured creditors in the event of a liquidation in Chapter 7. If unsecured creditors would be paid at all in a Chapter 7 case, it would be from proceeds from a sale of 187 Main St., Point Arena, CA (hereinafter the "Real Property") conducted by a trustee. The likelihood is that a sale in Chapter 7 would generate less proceeds than would be

available under the Plan. It would also likely take longer for creditors to get paid in Chapter 7 than it would under the Plan.

If Anne Freeman, Trustee of the Anne Freeman Family Trust, Dated June 15, 2014 were to obtain relief from the Automatic Stay to foreclose her Deed of Trust encumbering the Real Property (which would be a distinct possibility in Chapter 7 given the modest amount of equity, the likely amount of administrative claims and the softening real estate market), unsecured creditors would receive nothing in a Chapter 7 case. The Real Property is the only asset in the case, aside from a debtor-in-possession bank account with a balance of approximately $3,000, representing post-petition rents collected by the Debtor, which are the cash collateral of Ms. Freeman, and which will likely be paid to her prior to confirmation as provided in 11 U.S.C. § 362(d)(3).

A Chapter 7 liquidation could take years before distribution is made, if any. In a Chapter 7 case involving a sale of the Real Property, additional Chapter 7 administrative expenses would be incurred by a trustee as well as any other professionals employed by the bankruptcy estate, such as attorneys and tax professionals. Any tax consequences of liquidation, expenses of sale, administrative expenses for Chapter 7 professional fees and trustee's fees and any remaining Chapter 11 administrative expenses (after application of the pre-petition retainer) would be paid before general unsecured claims. The treatment of unsecured claims under the Plan affords a higher level of certainty and a higher rate of distribution on unsecured claims than would exist in a Chapter 7 case.

B. FILING OF REORGANIZATION CASE.

On September 15, 2025, the Debtor filed its petition pursuant

to Chapter 11 of the Code. Since that time, the Debtor has remained in possession of its property as debtor-in-possession.

C. <u>MANNER OF VOTING</u>.

All creditors entitled to vote on the Plan may cast their votes for or against the Plan by completing, dating, signing and causing the Ballot Form accompanying this Disclosure Statement to be sent to the Debtor's counsel prior to the date set by the Court for the filing of such ballots.

D. <u>CONFIRMATION OF THE PLAN</u>.

1. <u>Solicitation of Acceptance</u>.

This Disclosure Statement has been approved by the Court in accordance with Section 1125 of the Code and is provided to each creditor whose claim has been scheduled by the Debtor or who has filed a Proof of Claim against the Debtor and to each interest holder of record as of the date of approval of this Disclosure Statement. The Disclosure Statement is intended to assist creditors and interest holders in evaluating the Plan and in determining whether to accept the Plan. Under the Code, acceptance of the Plan may not be solicited unless a copy of this Disclosure Statement is received prior to or concurrently with such solicitation.

2. <u>Persons Entitled to Vote on Plan</u>.

Only the votes of Classes of claimants and interest holders which are impaired by the Plan are counted in connection with confirmation of the Plan. Generally and subject to the specific provisions of Section 1124 of the Code, this includes creditors who, under the Plan, will receive less than full payment.

In determining acceptance of the Plan, votes will only be

counted if submitted by a creditor whose claim is duly scheduled by the Debtor as undisputed, non-contingent and unliquidated, or who, prior to the hearing on confirmation, has filed with the court a Proof of Claim which has not been disallowed or suspended prior to computation of the votes on the Plan. The Ballot form which you receive does not constitute a Proof of Claim. If you are in any way uncertain whether or not your claim has been correctly scheduled, you should review the Debtor's schedules which are on file with the Bankruptcy Court. The Clerk of the Bankruptcy Court will not provide this information by telephone.

### 3. Hearing on Confirmation of the Plan.

The Bankruptcy Court will set a hearing to determine whether the Plan has been accepted by the requisite number of creditors and interest holders and whether the other requirements of confirmation are satisfied. Each creditor and interest holder will receive, either with this Disclosure Statement or separately, the Bankruptcy Court's Notice of Hearing on Confirmation of the Plan.

### 4. Acceptance Necessary to Confirm Plan.

At the scheduled hearing, the Bankruptcy Court must determine, amongst other things, whether the Plan has been accepted by each impaired Class. Under Section 1125 of the Code, an impaired Class is deemed to have accepted the Plan if at least two thirds in amount and more than one-half in number of the allowed claims or interests of Class members who have voted to accept or reject the Plan have voted for acceptance of the Plan. Unless there is unanimous acceptance of the Plan by an impaired Class, the Bankruptcy Court must also determine that under the Plan Class members will receive

property of a value, as of the effective date of the Plan, that is not less than the amount that such Class members would receive or retain if the Debtor were liquidated under Chapter 7 of the Code on the effective date of the Plan.

5. <u>Confirmation of the Plan Without Necessary Acceptance</u>.

The Plan may be confirmed even if it is not accepted by one or all of the impaired classes, if the Bankruptcy Court finds that the Plan does not discriminate unfairly against and is fair and equitable as to such class or classes.

6. <u>Feasibility of the Plan</u>.

One of the requirements to confirm a Chapter 11 Plan under Section 1129 of the Code is that confirmation is not likely to be followed by the liquidation, or the need for further financial reorganization, unless liquidation or reorganization is proposed in the plan. In other words, a debtor must demonstrate that the Plan is feasible in order for the plan to be confirmed.

To demonstrate that a plan is feasible, a debtor need only show a reasonable probability of success. The Code does not require the debtor to prove that success is inevitable, and a relatively low threshold of proof will satisfy the feasibility requirement, so long as adequate evidence supports a finding of feasibility.

II

A. DESCRIPTION OF DEBTOR AND HISTORICAL BACKGROUND.

The Debtor is a limited liability company formed in February, 2022 under the laws of the State of California. Jeffrey Hansen, the court-appointed Responsible Person [Doc. # 24] is the Managing Member and owner of a 50% membership interest. The other members of the Debtor are James and Rochelle Hansen, who each own a 25%

membership interest. James and Rochelle Hansen are Jeffrey Hansen's brother and sister-in-law.

The Debtor acquired its interest the Real Property by Grant Deed, dated August 3, 2022. The Real Property consists of a commercial space (formerly a grocery store) and two residential units. The commercial space is ultimately intended to be used as a laundromat. The Debtor rents one of the residential units for $1,000 per month while the other residential units is vacant and used for storage. Since the filing of the case, the Debtor deposited the rents in its Wells Fargo debtor-in-possession account.

In or about August, 2022, the Debtor borrowed the sum of $487,000 from Anne Freeman, Trustee of the Anne Freeman Family Trust, dated June 5, 2014. In exchange, the Debtor executed a Promissory Note obligating repayment of the debt with non-default interest of 13% per annum and gave Ms. Freeman a consensual lien encumbering the Real Property, which was perfected on August 7, 2025 with the recording of a Deed of Trust. The loan matured on September 1, 2025.

At all relevant times, it has been the intent of the Debtor and its Principals to satisfy the secured claim of Anne Freeman from a refinance of the Real Property. The state of the economy made difficult the timely completion of the planned refinance, which was further frustrated by Managing Member Jeff Hansen being treated for a serious medical condition.

Notwithstanding the challenges, the Debtor is in the midst of negotiations with a prospective lender who indicated a willingness to refinance the Real Property along with other properties owned by related entities. Because the Debtor was unable to complete the

refinance prior to a trustee's sale by Ms. Freeman's loan servicing company scheduled for September 16, 2025, the Debtor was left with no choice but to commence this case to effectuate the Automatic Stay provisions of 11 U.S.C. § 362(a).

An entity related to the Debtor, Wildflower Investment Properties, LLC, is the owner of a five-plex and a lot on Center Street in Point Arena, CA (collectively the "Five-Plex"). Another entity related to the Debtor, 610 Properties, LLC is the owner of two duplexes on Mill Street in Point Arena, CA (the "Duplexes"). The Five-Plex and the Duplexes serve as collateral for two loans, a first loan made by Bret Christianson in the approximate amount of $1,075,000 and a second loan made by Brent Christianson and Paul Evans in the approximate amount of $110,000.

The refinance transaction contemplated by the Debtor's Principals, which is expected to come together before confirmation, involves a new lender loaning approximately $575,000 to 610 Properties, LLC which will be used to reduce the amount owing to Bret Chistianson on the first loan that is cross-collateralized with the Five-Plex and Duplexes. As a condition of the new loan being made, Bret Christianson and Paul Evans agreed to reconvey the Deed(s) of Trust securing the second cross-collateralized loan for $110,000 and accept different collateral put up by the Debtor's Principal(s). In turn, Bret Chistianson agreed to loan a sufficient amount of money to 610 Properties, LLC to enable it to satisfy the Class 3 claim of Anne Freeman and fund the payments on other Classes of claims that are required under the Plan. In exchange, the Debtor will transfer title to the Real Property to 610 Properties, LLC.

The Debtor believes that the value of the Real Property is approximately $650,000. As of the petition date, the amount owing on the mortgage was approximately $555,000. See Proof of Claim No. 3. There are approximately $3183.63 of unsecured claims in the case, of which $1,500 relates to Proof of Claim No. 1 filed by the IRS, $1,442.81 relates to Proof of Claim No. 2 filed by the FTB and $240.82 relates to Proof of Claim No. 4 filed by PG&E for utilities. Aside from the modest amount of equity in the property, the Real Property represents an important part of the Debtor's Principals' business plans in Point Arena, California.

B. PROPERTY OF THE ESTATE.

The commencement of a bankruptcy case creates an estate. Sections 541 and 1115 of the Code set forth the types of property which comprises the estate. Property of the estate under Section 541 that existed on the commencement of the case and is reflected in the Debtor's Schedule A and Schedule B which are on file with the Court. The values listed in the Schedules are values as of the Petition Date in September, 2025. Property of the estate under Section 1115 includes property of the type described in Section 541 which was acquired post-petition as well as post-petition earnings.

The Real Property is property of the bankruptcy estate. Its value is approximately $650,000 and it encumbered by a lien securing a $555,000 debt owed to Anne Freeman. Property of the estate also includes a Wells Fargo debtor-in-possession Account with a balance of approximately $3,025, and the Debtor's post-petition rental income. The rental income and deposited funds in the debtor-in-possession account represent cash collateral securing Anne Freeman's claim as provided in her Deed of Trust.

C. CLAIMS AGAINST THE ESTATE.

Under Sections 501 and 1111(a) of the Code, a claim or interest is deemed allowed if a proof of claim or interest is filed by the holder of the claim or interest, or if the claim or interest appears in the schedules filed by the debtor, unless it is scheduled as disputed, contingent or unliquidated. Under Section 502 of the Code, a claim is deemed allowed unless and until objected to. If a claim is objected to, the claim is determined by the Court. Claims are typically characterized as secured, administrative, priority or general unsecured.

1. Secured claims. The only secured claims in the case are the statutory lien in favor of Mendocino County for secured tax roll assessments and the $554,774.65 claim of Anne Freeman, Trustee of the Anne Freeman Family Trust, dated June 5, 2014, as reflected in Poof of Claim No. 3. The claim encumbers the Real Property (and rents) with a Deed of Trust. The Plan provides for payment of any claim for delinquent secured tax roll assessments owed to the County of Mendocino which is estimated at $11,200.

3. Administrative Claims.

Administrative claims are addressed in Section 503 of the Code. The only anticipated administrative claim in this case relates to attorney's fees and costs incurred by the Debtor in connection with this case. Around the time of confirmation, Counsel for the Debtor will seek approval of compensation under Section 330 of the Code.

Total attorneys fees for the case are estimated between $30,000 and $50,000. After application of the pre-petition retainer of $33,597, it is expected that there will be a balance owing of somewhere between $0 and $15,000. If the Real Property is refinanced

or sold, it is anticipated that any administrative claims not otherwise paid would be paid from the proceeds of refinance or sale. Approval by the Court of attorney compensation under Section 330 of the Code is required prior to any payments, regardless of any agreement with the Debtor.

4.    <u>Priority Claims</u>.

Section 507 of the Code governs the priority claims. There are no priority claims listed in the Debtor's Schedule E. The Internal Revenue Service ("IRS") filed Proof of Claim No. 1, which asserts a general unsecured claim of $1,500. The Franchise Tax Board ("FTB") filed Claim No. 2, which asserts a claim for $5,064.66, of which $3,621.85 is listed as priority and the balance as a general unsecured claim. The claims filed by the IRS and FTB are both estimates for tax years from 2022 to the present because the Debtor has not yet filed tax returns. The amount of any liability will inevitably change when the Debtor files tax returns.

5.    <u>General Unsecured Claims</u>.

The Debtor's Schedule F filed in the case reflects non-priority general unsecured debts of $12,570.13, consisting of $12,077.64 owed to the Mendocino County Tax Collector for "[b]usiness property tax" and $492.49 owed to PG&E for utility services. PG&E filed Proof of Claim No. 4, which asserts a claim for $240.82. It was later determined that the Mendocino County Tax Collector is owed $11,133.46 for delinquent *secured* tax roll assessments for the 2024/2025 tax year.

The estimate of general unsecured claims for purposes of distribution under the Plan is therefore $3,183.63 based on $1,500 owed to IRS (Proof of Claim No. 1), $1,442.81 owed to FTB (Proof of

Claim No. 2) and $240.82 owed to PG&E (Proof of Claim No. 4). The amount(s) will inevitably change upon the Debtor filing tax returns.

III

A. <u>CHAPTER 11 PLAN OF REORGANIZATION</u>.

Under the Plan, the Debtor will retain the real property located at 187 Main St., Point Arena, CA, at least until the Real Property is refinanced or sold (with refinance being the Debtor's goal). The Plan modifies the secured claim of Anne Freeman, Trustee of the Anne Freeman Family Trust, dated June 5, 2014 (Poof of Claim No. 3) by restructuring it based on a full 30-year amortization of principal and interest at a market rate, with the balance being due at five (5) years from the Effective Date of the Plan. Under the Plan, the Debtor will make monthly payments to Ms. Freeman until such time as her claim is satisfied.

The Plan proposes to pay administrative claims and other priority claims in full, and proposes to pay 90% of allowed general unsecured claims. The Plan further provides that claims will be paid as provided in the Plan from proceeds from a refinance or sale. Under the Plan, the Debtor may transfer title to 187 Main St., Point Arena, CA to 610 Properties, LLC as a condition of refinance.

1. <u>Classification and treatment of claims</u>.

The following is a brief summary of the Plan, with comments. The following is qualified in its entirety by the full text of the Plan itself. The Plan, if confirmed, will be binding upon the Debtor, its creditors and interest holders. All creditors and interest holders are urged to read the Plan carefully.

Administrative claims will be paid in full under the Plan. In particular, the Debtor's Attorney's fees are estimated between $0

and $15,000 after application of the pre-petition retainer. Upon approval by the Court, the remaining claim (if any) will be paid pursuant to terms agreed to by the Debtor and its Attorney, and may be paid from proceeds of refinance or sale.

The Plan divides claims and interests into 5 separate classes, and then proposes a treatment for each class of claims.

The classes and treatment of each class are as follows:

a. <u>Class 1 Claims.</u> Allowed claims entitled to priority pursuant to Section 507 of the Bankruptcy Code.

i. *Proposed treatment*: Holders of allowed Class 1 Claims shall be paid in equal monthly installments of principal and interest or more at the statutory rate beginning on the Effective Date of the Plan and continuing for a period ending at 5-years after the Petition Date.

ii. *Comment*: The total of Class 1 priority claims is $3,621.85 based on Proof of Claim No. 2 filed by FTB. The referenced 5-year period would run from the petition date, September 15, 2025 through 2030. However, the likelihood is that any priority claim for taxes will be paid much sooner in connection with refinance of the Real Property.

b. <u>Class 2 Claims.</u> Allowed secured claim of the County of Mendocino based upon the secured tax roll and secured by real property located at 187 Main St., Point Arena, CA.

i. *Proposed treatment*: Holders of allowed Class 2 Claims which are not current on the effective date of the Plan shall be placed on a five-year plan as provided by statute for real property located at 187 Main St., Point Arena, CA.

Such Holders shall retain the lien in the collateral. Class 2

claims will be paid in full upon refinance or sale of the real property.

ii. *Comment*: Class 2 Claims are expected to be $11,133.46 based on delinquent assessments for the 2024/2025 tax year. An owner of a property that becomes tax defaulted may open an installment account to pay the full redemption amount together with penalty interest of 18% per annum over a 5-year period. The Plan proposes that the Debtor would open an installment account with the County of Mendocino to pay the full redemption amount over a five-year period if any Class 2 claims are allowed in connection with the case. The monthly payment under an installment agreement would be approximately $318.72 More likely, however, is that any outstanding property tax assessment(s) will be paid from refinance proceeds. The Debtor will pay installments for post-petition secured tax roll assessments directly to the Mendocino County Tax Collector.

c. <u>Class 3 Claims.</u> Allowed secured claim of Anne Freeman, Trustee of the Anne Freeman Family Trust, Dated June 5, 2014 secured by a Deed of Trust encumbering real property located at 187 Main St., Point Arena, CA.

i. *Proposed treatment*: Holders of allowed Class 3 Claims shall be paid an amount equal to such holder's interest in the estate's interest in the collateral, to be determined in accordance with Section 506 of the Bankruptcy Code, in monthly installments of principal and interest at a Market Rate of Interest based upon a thirty year amortization. Unless earlier satisfied from refinance or sale, the balance will be due at five (5) years from the Effective Date of the Plan.

Such Holders shall retain the lien in the collateral. Class 2

claims will be paid in full upon refinance or sale of the real property. The Debtor will pay post-petition secured tax roll assessments directly to the Mendocino County Tax Collector.

ii. *Comment*: The Plan proposes monthly payments on Class 3 claims of approximately $3,700 per month for up to five (5) years, at which time the full outstanding amount would be due and payable. More likely, however, is that the claim will be satisfied much sooner in connection with a refinance of the Real Property. The Debtor contends that the treatment is fair and equitable.

d. <u>Class 4 Claims.</u> Allowed claims of creditors, other than those holding allowed Class 1 Claims, Class 2 Claims, Class 3 Claims and Class 5 Interests including, but not limited to, creditors whose claims may arise out of the rejection of executory contracts and secured creditors to the extent that the Bankruptcy Court finds the same unsecured in whole or in part.

i. *Proposed treatment*: Holders of Class 4 Claims shall be paid 90% of their Allowed Claims over a period of 1-year in four (4) equal quarterly installments beginning on the Effective Date of the Plan.

Class 4 Claims will be paid upon refinance or sale of the real property.

ii. *Comment*: Based on the expected amount of Class 4 claims, i.e., $3,183.63, the Debtor would pay under the Plan a total of $2,865.27 in four (4) equal quarterly installments of $716.32 which would be shared pro rata by creditors holding Class 4 claims. As with the other classes of claims, the likelihood is that Class 4 claims will be paid much sooner from proceeds of refinance.

e. <u>Class 5 Interests</u>. Allowed interests of Debtor.

i. *Proposed treatment*: Holders of Class 5 Interests shall retain their interests in the reorganized Debtor, provided however that such Holders shall make the payments contemplated under the Plan to whatever extent rental income is not sufficient for the Debtor make such payments including, without limitation, payments to the Holders of Class 1 claims, Holders of Class 2 claims, Holders of Class 3 claims Holders of Class 4 claims.

Property of the estate shall re-vest in the Debtor on the effective date of the Plan subject to the terms of the Plan.

ii. *Comment*: the Debtor currently collects $1,000 per month in rents, which will be used towards debt service on the Class 3 claim of Anne Freeman. The Principals of the Debtor will contribute such additional amount is necessary to pay the balance of the monthly payment on the Class 3 claim of Anne Freeman, as well as the payments required on all other Classes of claims. In exchange for an unknown amount of contributions, which could be substantial depending on the amount of time from confirmation to refinance, the Principals of the Debtor will retain their equity.

2. The Plan provides for the following means of performance:

a. The Debtor will continue to generate rental income from 187 Main St., Point Arena, CA.

b. The Debtor will use its best efforts cause real property located at 187 Main St., Point Arena, CA to be refinanced as soon as practicable. If/when a refinance is effectuated, holders of allowed claims secured by such property (i.e. Holders of Class 2 claims and Holders of Class 3 claims) shall be paid from the proceeds of refinance, together with interest as herein provided. Holders of Class 1 claims and Holders of Class 4 claims will also be

paid from the proceeds of the refinance as herein provided. Upon such payment, the Debtor may transfer title to 187 Main St., Point Arena, CA to 610 Properties, LLC as a condition of the refinance.

c. The Debtor may cause real property located at 187 Main St., Point Arena, CA to be leased or sold. If a sale is effectuated, holders of allowed claims secured by such property shall be paid from the proceeds of sale together with interest. Holders of Class 1 claims and Holders of Class 4 claims will also be paid from the proceeds of sale as herein provided.

d. The Debtor shall commence payments to holders of allowed secured claims on the Effective Date of the Plan. To the extent not heretofore commenced and resolved, motions or Adversary Proceedings will be commenced within 90-days of the Effective Date of the Plan to determine such secured amounts pursuant to Section 506 of the Bankruptcy Code where such determination is relevant to the implementation of the Plan terms.

e. Taxes on the secured tax roll which are not current on the effective date shall be placed on a five-year Plan pursuant to applicable Statute.

f. No party shall take any action against the Debtor, its assets, or assets of the bankruptcy estate inconsistent with the terms of the Plan.

g. The Debtor shall commence payments to the unsecured creditors on the Effective Date of the Plan. The distributions may be made from a disbursing account on a quarterly basis.

h. The Debtor shall comply with post confirmation reporting requirements to the U.S. Trustee and payment of U.S. Trustee fees post confirmation until entry of a final order as

required by law. Nothing contained in the Plan shall impose or expand the requirements for reporting and payment of fees as set forth by statute and/or case law. In the event the case is converted to a case under Chapter 7, the assets shall re-vest in the Chapter 7 estate.

i. Any sale or refinance of property may be made free and clear of liens as provided in the Bankruptcy Code. The Bankruptcy Court shall reserve jurisdiction to implement the Plan, to approve sale of property, and to direct such sale of property free and clear of lien where necessary or appropriate.

j. The Debtor reserves rights to object to any claim filed in the case and to assert any and all counterclaims against any party filing such a claim. The deadline to object to claims shall be the later of 1-year from the Effective Date of the Plan or 90-days from the filing of any Proof of Claim or amendment thereto.

k. Should the Debtor default on its obligations to pay secured creditors pursuant to the Plan, such creditors may exercise non-judicial remedies pursuant to State Law after fifteen (15) days written notice is given by first class mail postage prepaid. Should the Debtor default on its obligations to pay unsecured creditors pursuant to the Plan, such creditors may move for conversion or dismissal of the case under Section 1112(b) of the Code.

l. Confirmation of the Plan shall operate as a cure of any and all pre-confirmation defaults.

m. The Debtor reserves rights to object to the reasonableness of any attorneys fees and charges claimed by any secured creditor and to object to any claim of any creditor for which such creditor requests allowance.

n. The Debtor reserves rights to seek sanctions against any party to this proceeding or such party's attorney for violating Rule 9011 of the Federal Rules of Bankruptcy Procedure.

o. The Debtor reserves rights to avoid a transfer of property to any person under the Code. Any avoided transfer(s) will be preserved for the estate as provided in the Code. Such recovered property shall be liquidated and distributed on account of unsecured claims in accordance with the priorities set forth in Section 507 of the Code.

3. The Bankruptcy Court will retain jurisdiction under the Plan for the following purposes:

a. Determination of the allowance of claims upon objection to such claims by the Debtor based upon any provision of law, including, but not limited to any right of set off, counterclaims, statute of limitations, and any and all defenses thereto;

b. Determination of the validity, priority and extent of liens under any applicable provision of law;

c. Determination of requests for payment of claims entitled to priority under Section 507(a)(1) of the Code, including compensation of parties entitled thereto;

d. Determination of any counter claims against any party filing a claim in the case, and determination of any sanctions against any party to the case or such party's attorney for violating Bankruptcy Rule 9011.

e. Resolution of any disputes regarding the interpretation of the Plan;

f. Implementation of the provisions of the Plan and entry of Orders in aid of confirmation of the Plan, including without

limitation, appropriate orders to protect the Debtor from creditor actions, approval of refinance or sale of property, orders for sale free and clear of liens and interests;

g. Modification of the Plan pursuant to Section 1127 of the Code;

h. Determination of reasonableness of any attorneys fees and charges claimed by any creditor or lessor or secured creditor;

i. Avoidances of avoidable transfers pursuant to the Code and recovery of improper post-petition transfers, and any reserved cause of action;

j. Determination of secured status, extent of secured status, and Debtor's right to recover expenses from property securing claim pursuant to Section 506 of the Code;

k. Enforcement of stipulations entered into by the Debtor and orders and judgments made by the Bankruptcy Court;

l. Collection of any sums due the Debtor from other parties or from any other source;

m. Determination of rights and causes of action reserved to the Debtor; and

n. Entry of final decree.

B.   DISCUSSION OF CERTAIN CONFIRMATION REQUIREMENTS.

1.   *Acceptance by an impaired class*. The Debtor hopes to obtain unanimous acceptance of the Plan by classes impaired by the Plan, in which case confirmation will be requested under Section 1129(a) of the Code. Otherwise, the confirmation request will be under Section 1129(b) of the Code which requires that treatment of non-accepting classes be fair and equitable, amongst other requirements.

2. *Feasibility of the Plan*. In the context of this case, the requirement of feasibility means that the Debtor must show with adequate evidence that it has a reasonable probability of success in making the payments required under the Plan. The Debtor believes that the proposed Chapter 11 Plan is feasible. The Debtor will fund the Plan with post-confirmation rental income, and the Principals of the Debtor will pay the balance to the extent necessary.

The Debtor estimates that the Plan will require total monthly payments of less than $5,000 per month, plus payment of allowed expenses of administration (if any remain after application of the pre-petition retainer). Attached as Exhibit A is a spreadsheet reflecting the Debtor's current income and expenses, and its anticipated obligations under the Plan and otherwise.

3. Absolute priority rule. If there is not acceptance of a plan by one or more impaired class of claims and a debtor requests confirmation under Section 1129(b) of the Code, in addition to other requirements, a plan must either pay unsecured creditors in full or any junior class of claims may not receive or retain on account of such junior claim or interest.

There is a new value exception to absolute priority rule, which allows junior interest holders to receive distribution of property under Chapter 11 plan if they offer value to reorganized debtor that is: (1) new; (2) substantial; (3) money or money's worth; (4) necessary for successful reorganization; and (5) reasonably equivalent to value or interest that they receive.

Until such time as the Real Property is refinanced or sold, the Principals of the Debtor will contribute approximately $5,000 per month to enable the Debtor make the required distributions under the

Plan. Within a year, these payments would exceed the amount of equity in the Real Property. The Debtor contends that the substantial contributions by its Principals are sufficient to meet the new value exception.

4. <u>Hypothetical liquidation value</u>. 90% of allowed general unsecured claims will be paid under the Plan. The alternative, liquidation in Chapter 7, would likely net less to unsecured creditors because either Anne Freeman would foreclose her Deed of Trust, or the bulk of any sale proceeds would be used to pay tax consequences of liquidation, expenses of sale, administrative expenses for Chapter 7 professional fees and trustee's fees and any remaining Chapter 11 administrative expenses, and nothing would be left to pay general unsecured claims. A Liquidation Analysis with current values and estimated expenses is attached as Exhibit B.

C. <u>CONCLUSION</u>:

The assets and liabilities of the Debtor are set forth in the Debtor's Schedules, on file with the Court. The Debtor believes that the terms of the Plan are feasible, that it will be able to perform under the Plan and that the Plan complies with the Code.

Dated: 1/29/2025                              DAVID NYLE CHANDLER P.C.


By: <u>*/s/ David N. Chandler, Jr.*</u>
DAVID N. CHANDLER, JR.
Attorney for Debtor

**EXHIBIT A**

**Projected Income (monthly)**

Rent - 187 Main Street, Point Arena, CA:     $1,000.00

Contributions from LLC members:     $5,000.00

**Total**     **$6,000.00**

**Projected Expense (monthly)**

Property Tax:     $927.79

Insurance:     $637.06

**Total Expenses**     **$1,564.85**

**Projected Plan Expense (monthly)**

Class 1 (Priority Claims):     $60.00

Class 2 (Delinquent secured tax roll):     $318.72

Class 3 (Anne Freeman, DOT):     $3,700.00

Class 4 (general unsecured claims):     $238.77

Administrative expense:     TBD

**Total Plan Expenses**     **$4,317.49**

**EXHIBIT B**          **LIQUIDATION ANALYSIS**

| Property: | Value: | Secured Debt: | Equity: |
|---|---|---|---|
| 187 Main Street, Point Arena, CA 95468 | 650,000 | 600,000 estimated | 50,000 |
| Wells Fargo Debtor-In-Possession account | 3,025 | 600,000 estimated | 0 |

**Expenses of Administration:**

| | |
|---|---|
| Costs of sale: | 50,000.00 |
| Chapter 11 administrative expenses: | TBD |
| Chapter 7 administrative expenses: | TBD |
| **NET AVAILABLE FOR GENERAL UNSECURED CREDITORS:** | 0.00 |