**WRIGHT, FINLAY & ZAK, LLP**
ARNOLD L. GRAFF, ESQ. SBN 269170
agraff@wrightlegal.net
4665 MacArthur Court, Suite 200
Newport Beach, CA 92660
Telephone: (949) 477-5050
Facsimile: (949) 608-9142
WFZ #: 252-20252751

Attorney for Objecting Secured Creditor,
ANNE FREEMAN, TRUSTEE OF THE ANNE FREEMAN FAMILY TRUST, DATED JUNE 5, 2014

# UNITED STATES BANKRUPTCY COURT

## NORTHERN DISTRICT OF CALIFORNIA – SANTA ROSA DIVISION

| | |
|---|---|
| In re:<br><br>WILDFLOWER INVESTMENT PROPERTIES II, LLC,<br><br>        Debtor and Debtor-in-Possession. | Case No.: 25-10580-WJL<br>Chapter: 11<br><br>**OBJECTION TO DEBTOR'S CHAPTER 11 PLAN DATED APRIL 6, 2026**<br><br>**Hearing**<br>Date: July 7, 2026<br>Time: 9:30 a.m.<br>Crtm: **ZOOM ONLY**<br>Location:  United States Bankruptcy Court<br>          1300 Clay Street<br>          Oakland, CA 94612 |

**TO THE HONORABLE WILLIAM J. LAFFERTY, UNITED STATES BANKRUPTCY JUDGE, THE DEBTOR, ITS COUNSEL OF RECORD, THE U.S. TRUSTEE, AND ALL OTHER INTERESTED PARTIES:**

ANNE FREEMAN, TRUSTEE OF THE ANNE FREEMAN FAMILY TRUST, DATED JUNE 5, 2014 ("Creditor") respectfully submits this objection to the Chapter 11 Plan of Reorganization Dated April 6, 2026 (the "Plan"), filed by Wildflower Investment Properties II, LLC ("Debtor") in the above-referenced chapter 11 bankruptcy case (the "Bankruptcy")

1

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

## MEMORANDUM OF POINTS AND AUTHORITIES

### I.   INTRODUCTION

Debtor's Plan is not confirmable as a matter of law, as it clearly fails to comply with the requirements of 11 U.S.C. § 1129. In particular, the proposed plan: (1) is not fair and equitable, as it seeks to extend a 3-year business purpose loan that already matured nearly a year ago by an additional 5+-year period from plan confirmation, (2) seemingly violates the Absolute Priority Rule, (3) is not feasible in that it requires a monthly payments and a very large lump sum payment at the end of the Plan without providing specific details (and no evidence) regarding the means to accomplish the speculative plan, (4) seemingly violates 11 U.S.C. § 506, and (5) seeks to reduce the Creditor's interest rate to an impermissible rate under the bankruptcy code.

### II.   STATEMENT OF FACTS

A.   **Loan History**

On or about August 4, 2022, Debtor obtained a loan from  in the original amount of $487,000.00 (the "Note"), which requires 35 monthly interest-only payments of $5,275.83 each, commencing October 1, 2022 and continuing until a final lumpsum payment of the total unpaid loan balance, plus all accrued interest, unpaid fees, costs and charges, becomes due on or about September 1, 2025 (the "Maturity Date''). The Note was signed by Debtor's managing member, Jeffrey C. Hansen.  A true an correct copy of the Note is attached hereto as **Exhibit 1** and is incorporated herein by reference.

Repayment under the Note was secured by recording a deed of trust against the real property located at 187 Main Street, Point Arena, CA 95468 (the "Property") on August 17, 2022, in the Mendocino County Recorder's Office (the "Deed of Trust"). A true and correct

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 2 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

copy of the Deed of Trust is attached hereto as **Exhibit 2** and is incorporated herein by reference.

### a) *Debtor's Default Under the Loan Documents*

Debtor subsequently defaulted under the terms of the Note and Deed of Trust, which caused Creditor to commence foreclosure proceedings. True and correct copies of the Notice of Default and Notice of Trustee's Sale are attached hereto as **Exhibit 3** and **Exhibit 4**, respectively, and are incorporated herein by reference.

### B. **Bankruptcy Case Filing**

On or about September 15, 2025, on the eve of the scheduled trustee's sale, Debtor filed a petition under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Northern District of California, Santa Rosa Division, as Case No. 25-10580-WJL [ECF #1].

### a) *Debtor's Petition and Schedules*

On or about September 29, 2025, Debtor filed schedules A/B and D, alleging under penalty of perjury, that (1) the Property is being used as Debtor's principal residence, (2) the value of the Property is $650,000.00, and (3) is secured by Creditor's claim in the estimated sum of $553,675.24 [*See* ECF #s 15, 43-44]. Debtor's Schedules and Statement of Financial Affairs ("SOFA") also reflect that the Property are generating rental income of $1,000.00 per month, and that Debtor is not generating any separate income. [*See* ECF # (s) 15 & 16].

### b) *341(a) Creditor's Meeting*

On October 20, 2025, Debtor testified at his 341(a) creditor's meeting that the main purpose for filing the Bankruptcy was to prevent Creditor's scheduled foreclosure sale, and to provide time for Debtor to complete a refinance of the Property. Debtor also testified that he had a refinance of the Property ready to go and would be filing a motion to refinance the

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 3 of 19

Property by no later than 30 days after the October 20 creditor's meeting. [*See* **Exhibits 1-2** & ECF #s 29 & 32].

        *c)*        <u>*Debtor's Monthly Operating Reports*</u>

Debtor's Monthly Operating Reports ("MORs") filed throughout the Bankruptcy reflect that Debtor has generated little to no net monthly income throughout this nine-month-old bankruptcy case, as is broken down below:

- Debtor's <u>September 2025</u> MOR reflects a net cash increase of <u>$0.00</u> [ECF #25].
- Debtor's <u>October 2025</u> MOR reflects a net cash increase of <u>$2,000.00</u> [ECF #26].
- Debtor's <u>November 2025</u> MOR reflects increase of <u>$0.00</u> [ECF #30].
- Debtor's <u>December 2025</u> MOR reflects a cash net increase of <u>$1,000.00</u> [ECF #31].
- Debtor's <u>January 2026</u> MOR reflects a cash increase of <u>$0.00</u> [ECF #45].
- Debtor's <u>February 2026</u> MOR reflects a net cash increase of <u>$1,387.00</u> [ECF #48].
- Debtor's <u>March 2026</u> MOR reflects a net cash decrease of <u>($1,040.00)</u> [ECF #58].
- Debtor's <u>April 2026</u> MOR reflects a net *increase* of <u>$31.00</u> for April 2026 [ECF #59].
- Debtor's <u>May 2026</u> MOR reflects a net cash increase of <u>$730.00</u> [ECF #63].

        *d)*        <u>*Debtor's Disclosure Statement*</u>

The Amended Disclosure Statement ("DS") [ECF # 50], which was filed on April 6, 2026 (after the initial DS was denied), states, among other things, that:

- Debtor filed the Bankruptcy shortly before Creditor's scheduled foreclosure (pg. 8)
- The Property consists of a commercial space (formerly a grocery store) and two residential units. Debtor rents one of the residential units for $1,000 per month while the rest of the Property is vacant. (pg. 7).
- Debtor will restructure Creditor's secured claim based on a full 30-year amortization of principal and interest at the "market rate"[1], with the balance being due at five (5) years from the Effective Date of the Plan unless the Property is refinanced or sold before then (pg. 3)
- An entity related to the Debtor, Wildflower Investment Properties, LLC, is allegedly the owner of a five-plex and a lot on Center Street in Point Arena, CA (collectively the "Five-Plex"). Another entity related to the Debtor, 610 Properties, LLC is the owner of two duplexes on Mill Street in Point Arena, CA (the "Duplexes"). The Five-Plex and the Duplexes serve as collateral for two loans, a first loan made by Bret Christianson in the approximate amount of $1,075,000 and a second loan made by Brent Christianson and Paul Evans in the approximate amount of $110,000. (p. 8).

---

[1] The DS defines the Market Rate as "8% per annum or such other rate of interest as the Bankruptcy Court determines at the time of confirmation. [*See* ECF # 50, pg. 26].

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 4 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

• The refinance transaction contemplated by Debtor's Principals, *which is expected to come together before confirmation*, involves a new lender loaning approximately $575,000 to 610 Properties, LLC which will be used to reduce the amount owing to Bret Christianson on the first loan that is cross-collateralized with the Five-Plex and Duplexes. As a condition of the new loan being made, Bret Christianson and Paul Evans agreed to reconvey the Deed(s) of Trust securing the second cross-collateralized loan for $110,000 and accept different collateral put up by Debtor's Principals (p. 8). In turn, Bret Christianson agrees to loan for a sufficient amount of money to 610 Properties, LLC to enable it to satisfy Creditor's claim and fund the payments on all other Classes of claims that are required under the Plan. In exchange, the Debtor will transfer title to the Property to 610 Properties, LLC. (pg. 8)

• The Members of Debtor[2] will contribute $7,924.00 monthly, of which $4,072.00 will be paid to Creditor. (pgs. 27-28).

• The value of the Property is $650,000 and the estimated costs of any sale of the Property would be $85,000. (pg. 28)

[*See* ECF # 50]. While the DS states that Debtor's bankruptcy plan is heavily reliant on the monthly contributions from its members until the refinance finally occurs, there is hardly any information, and even less no evidence, explaining or substantiating the source and means of said contribution payments. [See Docket 50 & Docket Generally].

e)      *Debtor's Chapter 11 Plan*

On April 5, 2026, Debtor filed the proposed Amended Chapter 11 Plan at issue (the "Plan"), which lists Creditor as a Class 3 secured claimant, whose claim is being impaired and shall be paid an amount equal to its interest the Property, but this amount "is to be determined pursuant to Section 506", and shall be paid in monthly installments of principal and interest at 8.0% interest, based upon a thirty year amortization. [See Docket 49]. The Plan also states that unless earlier satisfied from a refinance or sale, the balance of Creditor's claim will be due at five (5) years from the Effective Date of the Plan.[3] [*id*]. However, the Plan is apparently silent regarding real property insurance, and seemingly also proposes to pay off Creditor's claim via a

---

[2] Managing Member Jeffrey Hansen is a 50% owner, along with brother James and sister-in-law Rochelle Hansen who are each 25% owners (the "Managers" or "Members") [*See* ECF # (s) 1 & 50].
[3] The "Effective Date" of the Plan is thirty (30) days following the date the Order of Confirmation becomes final.

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 5 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

very large lumpsum payment by the end of the Bankruptcy. [See Docket 49].

**C.** **Outstanding Default**

On November 20, 2025, Debtor filed a secured proof of claim in the Bankruptcy, listing a total debt claim of $554,774.65 when the Bankruptcy commenced on September 15, 2026 [See CCR # 3].

The Loan was contractually due for the December 1, 2024 – August 1, 2025 payments (9 missed monthly payments) when it finally matured pre-petition on September 1, 2025. The total payoff amount on Creditor's loan had since increased to $572,533.33, as of May 14, 2026, and continues to increase as the Bankruptcy lingers.

### III. LEGAL AUTHORITY AND ARGUMENT

**A.** **Debtor's Plan Must Be Denied Confirmation Because It Fails To Meet Many Of The Requirements For Confirmation Under 11 U.S.C. § 1129.**

11 U.S.C. § 1129 provides that a Court shall confirm a proposed Chapter 11 plan only if it complies with the requirements of Section 1129. However, Debtor's proposed Plan is patently unconfirmable as a matter of law, as it clearly fails to comply with the requirements of 11 U.S.C. § 1129. In particular, the proposed Plan: (1) is not fair and equitable, as it seeks to extend a 3-year business purpose loan that already matured nearly a year ago by an additional 5+-year period from plan confirmation, (2) seemingly violates the Absolute Priority Rule, (3) is not feasible in that it requires a monthly payments and a very large lump sum payment at the end of the Plan without providing specific details (and no evidence) regarding the means to accomplish the speculative payments, (4) seemingly violates 11 U.S.C. § 506, and (5) seeks to reduce the Creditor's interest rate to an impermissible rate under the bankruptcy code.

/././

/././

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 6 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

a)    *Debtor's Plan Is Not Fair and Equitable Per 11 U.S.C. § 1129(a)(3).*

While a bankruptcy court may confirm a plan without the consent of an impaired class of secured creditors, a plan proposing to modify a secured claim may be confirmed only if the plan is fair and equitable with respect to the objecting class. *See* 11 U.S.C. § 1129(b)(1) & *Varela v. Dynamic Brokers, Inc., (In re Dynamic Brokers, Inc.*), 293 B.R. 489, 498 (9th Cir. BAP 2003).

Fair and equitable treatment of a secured creditor requires that a creditor retain the lien securing its claim (§ 1129(b)(2)(A)(i)(I)) and that the creditor receive deferred cash payments with a present value at least equal to the value of its claim (§ 1129(b)(2)(A)(i)(II)). *In re Arnold & Baker Farms*, 85 F.3d 1415, 1420 (9th Cir. 1996).  Deferred cash payments to an impaired class must be valued as of the effective date of the plan and "consist of an appropriate interest rate and an amortization of the principal which constitutes the secured claim." *Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters),* 994 F.2d 1160, 1169 (5th Cir. 1993).

In general, the courts have stated a plan is not fair and equitable with respect to a secured lender when the plan unduly shifts the risks of a successful reorganization to those creditors: "[T]he [terms of the plan] should not leave the lender so bare of protection as to greatly increase the risk or require a corresponding increase in the interest rate." *In re P.J. Keating Co*., 168 B.R. 464, 473 (Bankr. Mass. 1994); *see also Aetna Realty Investors v. Monarch Beach Venture (In re Monarch Beach Venture),* 166 B.R. 428, 436 (C.D.Cal. 1993). Other courts have suggested that a plan is not fair and equitable if the debtor is essentially speculating with the lender's interest in the assets. *In re Manion*, 127 B.R. 887, 890 (Bankr. N.D.Fla. 1991).

/././

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 7 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

Here, the proposed Plan is not fair and equitable as to Creditor's claim because, first, Debtor is proposing to reduce the interest rate to be paid on Creditor's fully matured claim to just 8.0% (which is barely above the national prime rate), and second, Debtor is proposing to extend Creditor's 36-month business purpose loan (which already matured nearly a year ago) by an additional 5+ years, while Debtor apparently proposes to make no further monthly payments until the effective date of the Plan, which may not happen for many months, if ever, as the effective date is thirty (30) days following the date the order of confirmation finally becomes final. [*See* ECF # 49]. Considering this is a fully matured business purpose loan in chapter 11 bankruptcy, secured by real property that admittedly has less than a 12.0%[4] equity cushion (even before the estimated costs of 8% are considered), and Debtor has already tried and failed to refinance the Property for the past year, the Plan places *all* the risk on Creditor.

Allowing Debtor to make greatly reduced payments from Debtor's members for an extensive period of time (depending on plan confirmation) before finally trying to make the highly speculative and very large lumpsum payment by year 5, would be extremely unfair and highly prejudicial to Creditor. [*Id*].  This treatment would allow Debtor to essentially speculate with Creditor's interest in the Property, which again, is not currently protected by a sufficient equity cushion, while Debtor also seeks to substantially reduce the interest rate to be paid to Creditor.   Far less interest in return for far greater risk.  This is not fair. It is not equitable.

Not only does the DS and Plan state that the contemplated refinance involves other parties and real properties that are not a part of this Bankruptcy, the proposed Plan is entirely reliant upon this complicated refinance arrangement that Debtor has allegedly already been attempting to close for the past year.  If the refinance were going to happen, it would have already happened.  And allowing Debtor to have over 5 more years to close this, while making

---

[4] The DS claims that the value of the Property is $650,000.00, and Creditor's claim has risen to at least $572,533.33, as of May 14, 2026.

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 8 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

greatly reduced payments, is insulting to Creditor, who put its faith in Debtor to perform under the terms of the loan documents, and is just a private family trust. [See CCR #3].  There is no reason why Debtor should be given an additional 5+ years to pay off an already fully matured loan. [See ECF #s 49-50]. Thus, the Plan simply cannot be confirmed under 1191(c) and should be denied.

> b) *Debtor's Plan Violates the Absolute Priority Rule*

As stated above, Section §1129(b)(2)(B) states a plan is fair and equitable with respect to a class of unsecured creditors if they are paid in full or no junior class retains any interest in estate property except that in a case in which the debtor is an individual, the debtor may retain property included in the estate under section 1115, subject to the requirements of subsection (a)(14). This provision is commonly known as the absolute priority rule.

The Ninth Circuit affirmatively held the absolute priority rule applies to all chapter 11 cases, adopting the "narrow view" of the rule. The security interest that Creditor has in the Property is senior to any interest Debtor has, yet to the extent the Plan seeks to modify and not pay Movant's claim in full, the Plan would not provide for the payment in full of Creditor's claim. It is not disputed from Debtor's schedules that there is at least some equity in the Property, and thus the claim is not subject to being crammed down, and even if it were, Debtor still needs to pay the full bifurcated unsecured portion of Creditor's claim to retain the Property post-bankruptcy.

Here, the Plan expressly states that Creditor's claim is being impaired and shall be paid an amount equal to its interest the Property, but "this amount is to be determined pursuant to Section 506". [ECF # 49].  Thus, to the extend the Plan is proposing to reduce Creditor's secured claim on the Loan, thus leaving any unsecured remainder thereof, but does not provide

9

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 9 of 19

to pay the full remaining unsecured claim in full to Creditor through the Plan, the Plan violates the absolute priority rule and must be denied confirmation.

c) *Debtor's Plan is Not "Feasible" as Required By 11 U.S.C. § 1129(a)(11)*

§ 1191(c)(3)(A) requires that a debtor be able to make all payments under a plan, or that there be a reasonable likelihood that the debtor will be able to make all payments under the plan. Moreover, under the feasibility requirement of Section 1129(a)(11), a debtor must demonstrate that the plan "has a reasonable probability of success." *Acequia, Inc. v. Clinton (In re Acequia, Inc.),* 787 F.2d 1352, 1364 (9th Cir. 1986). Section 1129(a)(11) provides that a Plan cannot be confirmed if confirmation of the Plan is likely to be followed by liquidation, or the need for further financial reorganization of the Debtor. The purpose of Section 1129(a)(11) is to prevent confirmation of "visionary schemes" which promise creditors more through the proposed Plan than the debtor can possibly obtain after confirmation. A plan that proposes a final balloon payment requires credible evidence that obtaining future financing is reasonably likely. *F.H. Partners, L.P. v. Inv. Co. of the Sw., Inc. (In re Inv. Co. of the Sw., Inc.),* 341 B.R. 298, 311, 313-14, 316-17 (10th Cir. BAP 2006) (finding plan not feasible when debtor had negative and uncertain cash flow with which to fund proposed balloon).

Here, Debtor's Plan is not even remotely feasible with respect to Creditor's claim because the Plan relies entirely on a substantial balloon payment, most likely via a refinance, by the end of the Plan [*See* ECF #s 49-50]. While the Plan states that Debtor intends to pay off Creditor's substantial claim via a refinance, it does not explain why Debtor has been unable to close said unusual refinance for the past year, and what circumstances have now changed to allow Debtor to finally close what is clearly a complicated refinance. [See ECF #s 49-50]. Indeed, Debtor has admittedly been attempting to close the refinance (and has been assuring

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 10 of 19

that the refinance is on the brink of closing) for the past year. Now Debtor wants 5 additional years to close the same refinance. The Plan is either not feasible, filed in bad faith, or both.

Moreover, Debtor has provided no credible evidence that Debtor can comply with the required massive lump sum payment by the end of the Plan, especially considering the multiple parties, non-bankruptcy properties and other unrelated loans that are apparently involved [See ECF # 50]. It must also be noted that Debtor provides no information nor evidence whatsoever to explain, substantiate nor confirm the monthly contribution of $7,924.00, to be paid by Debtor's members for many months, if not years, until the speculative refinance allegedly closes. [id]. The MORs and DS filed in the Bankruptcy make it abundantly clear that without the unexplained and unsubstantiated contribution payments, neither Debtor nor the Property is generating anywhere near sufficient monthly income to even keep the Property afloat, and the equity cushion in the Property continues to rapidly dwindle [*See* ECF #s 1, 14-15, 25-26, 30-31, 45, 48-50, 58, 63]. Creditor also believes that far greater payments are required to secured creditors than those currently alleged; the Plan simply does not fund.

Therefore, without far more information and evidence, the Plan is far too speculative to survive the feasibility test, and thus must be denied confirmation [*See* Dockets #s 49-50].

    *d)*     *Debtor's Plan Seemingly Violates 11 U.S.C. § 506.*

11 U.S.C. section 506(a) provides that "an allowed claim of a creditor secured by a lien on property in which the estate has an interest…is a secured claim to the extent of the value of such creditor's interest in the estate's interest in such property."

In the present case, Debtor's schedules, filed *under penalty of perjury*, and the proposed Plan, confirm that there is at least some equity in the Property. However, the proposed Plan expressly states that Creditor's claim is being impaired and shall be paid an amount equal to its interest the Property, and "this amount is to be determined pursuant to Section 506." [ECF #

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 11 of 19

49]. Despite this confusing treatment, the Plan does not state anything about any motion to value or adversary to be filed, and when, to determine the issue of value, and no such motions nor complaints have been filed to date. [See Court Docket, Generally]. Moreover, as Debtor admits there is some equity in the Property – albeit insufficient to adequately protect Creditor – such a bifurcation of Creditor's claim is not warranted nor permitted under the bankruptcy code. [See Dockets 1, 15 & 16]. As a result, to the extent the Plan intends to cram down Creditor's claim by reducing the claim below the actual fair market value of the Property without a court order determining value, at the time of confirmation, the Plan violate §506(a) and cannot be confirmed as proposed.

e) *Debtor's Plan Proposes to Reduce Creditor's Interest Rate to an improper amount*

Debtor's Plan proposes to reduce the interest rate to be paid on Creditor's secured claim to 8.0% [*See* ECF #s 49-50].

**1) The Plan Fails to Implement the Market Rate**

The determination of the appropriate interest rate is commonly based on the concept of providing "present value" to the secured claimant, and present value is often deemed to be the equivalent of "market rate" of interest. See In re Collier, 416 B.R. 713, 715 (N.D. Cal 2008).

Here, Debtor's Plan proposes to reduce Creditor's claim to the "Market Rate" of 8.0%, but Creditor submits that this is inconsistent with a "market rate" of interest, and the Plan should instead provide for the interest rate available to similarly situated borrowers in the loan market seeking a similar loan under the same terms and conditions. In this instance, the underlying loan was made to Debtor as a short-term loan on commercial property for a business purpose with contract interest at 13.0%. Creditor submits that the loan, made in 2022, reflects a reasonable "market rate" as of today, based on the nature of the loan (commercial) and the fact

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 12 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

that interest rates are always higher for short term business purpose loans. [See CCR #3]. Debtor also materially defaulted on the loan well over a year ago. As such, Creditor reasonably believes that Debtor should be required to pay at least the contractual interest rate of 13.00% through the plan, including the additional 6.0% default interest that Debtor agreed to when it signed the loan documents. [See CCR # 3]. Thus, the Plan must be denied.

### 2) The Plan Fails to Implement the Prime-Plus Formula

Even if the Court in this instance intends to utilize the two-part "prime-plus" formula established in *Till v. SCS Credit Corp.*, 541 U.S. 465, (2004), it still would not result in a significant reduction in the interest on Creditor's Loan. The Supreme Court in *Till* stated that:

> "the approach begins by looking to the national prime rate, reported daily in the press, which reflects the financial market's estimate of the amount a commercial bank should charge a creditworthy commercial borrower to compensate for the opportunity costs of the loan, the risk of inflation, and the relatively slight risk of default. Because bankrupt Debtor typically pose a greater risk of nonpayment than solvent commercial borrowers, the approach then requires a bankruptcy court to adjust the prime rate accordingly. The appropriate size of that risk adjustment depends, of course, on such factors as the circumstances of the estate, the nature of the security, and the duration and feasibility of the reorganization plan." *Id.* at 478-479.

In *In re Fowler*, the Ninth Circuit held that under the formula approach, that a court "starts with a base rate, either the prime rate, and then adds a factor based on the risk of default and the nature of the security (the risk factor)." *In re Fowler*, 903 F.2d 694, 697 (9th Cir.1990).

**The current Federal Prime Rate is 6.75%.** Creditor respectively requests that the Court take judicial notice of the current Federal Prime Rate, which is posted daily as matter of public record by the Board of Governors of the Federal Reserve System - Federal Prime Rate as of 6/30/2026 as posted on official government website for the Federal Reserve: https://www.federalreserve.gov/releases/h15/.

/././

---

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 13 of 19

In the present case, there is little doubt that Debtor proposes to reduce the interest rate on Creditor's secured claim to 8.0%, unless the court orders otherwise, and this rate is just barely above the current prime rate. [*See* ECF #s 49-50]. Creditor maintains that if the appropriate "prime-plus" formula is used, as prescribed in the *Till* case, the calculated interest rate to be paid by Debtor will be significantly higher. At a minimum, the Plan must provide for the base Federal Prime Rate of 6.75%,[5] plus additional interest based on the significant risk factors involved with this fully matured loan and chapter 11 case.

### 3) Proposed Interest Rate Fails to Incorporate Debtor's Default Risk

Once the base rate is determined, the risk of default and nature of the security (the "risk factor") is added to the base rate. *In re Fowler*, 903 F.2d at 697. In *Fowler*, the Ninth Circuit stated that in assessing risk a court should scrutinize the expenses and revenue projections of a debtor to determine a debtor's risk factor. *Id*. at 698. Based on the Debtor's substantial past defaults, and the fact that the fully matured Loan is currently in chapter 11 bankruptcy, the Court must increase the interest rate due to the Debtor's default risk. Indeed, Debtor defaulted under the terms of a 3-year business purpose loan, which then fully matured pre-petition on September 1, 2025, shortly before the Bankruptcy commenced to prevent the foreclosure sale. [See ECF # 50]. Now Debtor seeks to extend the loan by over 5 years with a far lower interest rate and with no clear explanation nor evidence how Debtor will make the ongoing payments and then cure the rest of the loan via a massive lumpsum payment by the end of the Bankruptcy. Based on the foregoing, and the commercial nature of this loan, the Court should add no less than 2.0% to the prime rate due to the Debtor's default risk.

/././

/././

---

[5] Creditor reserves the right to request a higher rate if the Federal Prime Rate increases prior to the confirmation hearing.

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 14 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

### 4) The Risks Associated with Security

As stated in *Fowler*, the Bankruptcy Court should factor both the debtor's risk of a default and the nature of the security when establishing the appropriate cramdown interest rate. Courts recognize that there is heightened risk associated with investment properties that are non-owner occupied. *Id*. In the present case, the Property is clearly investment property, per Debtor's Plan and schedules, and is not occupied by Debtor's principals but is mostly vacant aside from one portion being rented out to a residential tenant. [*See* ECF #s 1, 14-15, 49-50]. This greatly increases the risk damage to the Property.

Moreover, as previously mentioned, Debtor is attempting to confirm a plan that proposes to not make any adequate protection payments to Movant until the uncertain Effective Date of the Plan, and there are also many additional difficulties and regulations imposed on lenders under California law that makes proceeding to foreclosure and then completing eviction actions much more time consuming and expensive than in other states or even in California previously. As such, the Court should further adjust the interest rate by an additional 2.0% to account for this additional risk. In sum, using the formula approach, as set forth in *Fowler* and *Till*, the court should conclude that Creditor must be paid no less than **10.75%** (6.75% + 4.0%) for risk adjustments fixed interest per annum.

Debtor must come to grips with the reality that the proposed modification is highly risky and made even more so by the outstanding default, bankruptcy and future hurdles regarding this Property. The Bankruptcy Code forbids imposing uncompensated risk upon a non-consenting secured claimant.

/././

/././

/././

15

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 15 of 19

# IV.     CONCLUSION

Based on the foregoing, Creditor respectfully requests that the proposed Plan be denied confirmation.

Date: June 30, 2026                    WRIGHT, FINLAY & ZAK, LLP

/s/ *Arnold L. Graff*
ARNOLD L. GRAFF (SBN 269170)
Attorneys for Objecting Secured Creditor

16

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

## CERTIFICATE OF SERVICE

I am employed in the County of Orange, State of California.  I am over the age of eighteen (18) and not a party to the within action. My business address is 4665 MacArthur Court, Suite 280, Newport Beach, California 92660.

On 07/01/2026, I served the foregoing document described as **OBJECTION TO DEBTOR'S CHAPTER 11 PLAN DATED APRIL 6, 2026 WITH CERTIFICATE OF SERVICE** on the interested parties in this action as follows:

[X]     (BY MAIL) I caused such envelope with postage thereon fully prepaid to be placed in the United States mail at Newport Beach, California. I am readily familiar with the firm's business practice for collection and processing of correspondence for mailing with the U.S. Postal Service pursuant to which practice the correspondence is deposited with the U.S. Postal Service the same day in the ordinary course of business.  **See attached service list.**

[X]     (BY ELCTRONIC SERVICE) Pursuant to CM/ECF System, registration as a CM/ECF user constitutes consent to electronic service through the Court's transmission facilities.  The Court's CM/ECF systems sends an e-mail notification of the filing to the parties and counsel of record listed above who are registered with the Court's EC/ECF system.  **See attached service list.**

[X]     (FEDERAL) I declare that I am employed in the office of a member of the bar of this court at whose direction the service was made.

I declare under penalty of perjury of the laws of the United States that the foregoing is true and correct. Executed on 6/30/2026, at Newport Beach, California.

*/s/ Jackie Powell*
JACKIE POWELL

Case: 25-10580     Doc# 64     Filed: 06/30/26     Entered: 06/30/26 17:18:24     Page 17 of 19

# ADDITIONAL SERVICE INFORMATION

<u>TO BE SERVED BY THE COURT VIA NOTICE OF ELECTRONICA FILING ("NEF"):</u>

David N. Chandler    davechandler4331@yahoo.com, courtdocsdncpc@gmail.com
Jared A. Day    jared.a.day@usdoj.gov
Arnold L. Graff    agraff@wrightlegal.net, jpowell@wrightlegal.net
Office of the U.S. Trustee / SR    USTPRegion17.SF.ECF@usdoj.gov

<u>TO BE SERVED BY UNITED STATES MAIL:</u>

DEBTOR:
Wildflower Investment Properties II, LLC
Attn: Jeffrey C. Hansen
P.O. Box 669
Point Arena, CA 95468

DEBTOR:
Wildflower Investment Properties II, LLC
Attn: Shirlene Bastar Esq.
115 Foss Creek Circle
Healdsburg, CA 95448

DEBTOR:
Wildflower Investment Properties II, LLC
1791 E. 2100 S
Salta Lake City, UT 84106

DEBTOR:
Wildflower Investment Properties II, LLC
160 Main Street
Point Arena, CA 95468

DEBTOR'S COUNSEL:
David N. Chandler, Jr.
LAW OFFICES OF DAVID N. CHANDLER
1747 4th St.
Santa Rosa, CA 95404

U.S. TRUSTEE:
Office of the United States Trustee
Phillip J. Burton Federal Building
450 Golden Gate Ave. 5th Fl., #05-0153
San Francisco, CA 94102

COUNSEL FOR U.S. TRUSTEE:

Case: 25-10580    Doc# 64    Filed: 06/30/26    Entered: 06/30/26 17:18:24    Page 18 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL

Jared A. Day
Office of the U.S. Trustee
300 Booth St. #3009
Reno, NV 89509

MANUEL NOTICE:
Jeffrey C. Hansen
P.O. Box 669
Point Arena, CA 95468

Case: 25-10580   Doc# 64   Filed: 06/30/26   Entered: 06/30/26 17:18:24   Page 19 of 19

Secured Creditor's Objection to Chapter 11 Plan
Case No.: 25-10580-WJL